## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x
                :

In re                          :    Chapter 11

                :

VICTOR OOLITIC STONE COMPANY,    :    Case No. 14-10311

*d/b/a* INDIANA LIMESTONE CO., *et al.,*[1]    :

                :    (Joint Administration Pending)

       Debtors.             :

                :

-------------------------------------------------------------- x

### MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 363 AND 364, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)

The above-captioned debtors and debtors in possession (the "Borrowers" or the "Debtors") in the above-captioned cases hereby move (the "Motion"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an interim order (proposed form attached hereto as Exhibit B, the "Interim Order") and a final order, inter alia,

> (i) authorizing the Debtors to obtain secured post-petition financing (the "Post-Petition Financing") up to an aggregate principal amount not to exceed $3,500,000 from Indiana Commercial Finance, LLC (the "Lender");

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): VO Stone Holdings, Inc., a Delaware corporation (4952); and Victor Oolitic Stone Company, an Indiana corporation (4823). The Debtors' address is 301 Main Street, Oolitic, IN 47451.

(ii) granting the Lender, pursuant to Bankruptcy Code § 364(c) and (d), security interests in all of the Debtors' presently owned and after-acquired personal and real property and Pre-Petition Collateral (as defined below);

(iii) granting the Lender, pursuant to Bankruptcy Code § 364(c)(1), priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than in respect of the Carve-Out (as defined below);

(iv) authorizing the Debtors, pursuant to Bankruptcy Code § 363(c), to use Cash Collateral (as defined below) and, pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d), to provide adequate protection to the Lender with respect to any diminution in the value of the Lender's interest in the Pre-Petition Collateral (as defined below) resulting from the priming liens and security interests to be granted herein pursuant to Bankruptcy Code § 364(d) to secure the Post-Petition Financing, the use of Cash Collateral, the use, sale or lease of the Pre-Petition Collateral (other than Cash Collateral) and the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a);

(v) scheduling a preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001; and

(vi) scheduling a final hearing (the "Final Hearing") and establishing notice procedures in respect of the Final Hearing to consider entry of a final order (the "Final Order") authorizing on a final basis, inter alia, the Post-Petition Financing and the use of Cash Collateral.

The Debtors rely upon and incorporate by reference the Declaration of Terrence J. Reutell In Support of First Day Relief (the "Reutell Declaration"), which was filed with the Court concurrently herewith. In further support of the Motion, the Debtors, by and through their undersigned proposed co-counsel, respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 4001-2.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No trustee, examiner, or official committee has been appointed in these cases. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      The Debtors, headquartered in Oolitic, Indiana and doing business primarily as Indiana Limestone Company, are the leading producer of Indiana Limestone in the United States.

5.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Reutell Declaration.

## SUMMARY OF THE DEBTORS' PRE-PETITION SECURED INDEBTEDNESS AND CERTAIN NOTES

### *Loan and Security Agreement*

6.      The Debtors are party to: (a) that certain Amended and Restated Credit Agreement dated as of November 15, 2010, by and between Company and the Lender (as amended, modified or restated from time to time, the "Pre-Petition Credit Agreement"); (b) that certain Replacement Term Note dated as of January 30, 2014, payable by Company to the

Lender in the original principal amount of $47,400,000 (as amended, modified or restated from time to time, the "Term Note"); (c) that certain Replacement Revolving Note dated as of January 30, 2014, payable by Company to the Lender in the original principal amount of $6,000,000 (as amended, modified or restated from time to time, the "Revolving Note"); (d) that certain Security Agreement dated as of November 15, 2010, by and between Company and the Lender (as amended, modified or restated from time to time, the "Security Agreement"); (e) that certain Assignment of Real Estate Mortgage, Assignment of Leases and Rents and Fixture Filing, pursuant to which BMO Harris Bank N.A. ("BMO") as a prior administrative agent under the Credit Agreement, assigned all of its rights, title and interest in, to and under that certain Real Estate Mortgage, Assignment of Leases and Rents and Fixture Filing dated as of November 25, 2009, recorded on December 28, 2009 as Instrument No. 2009021961 in the Office of the Recorder of Monroe County, Indiana (as amended, modified or restated from time to time, "Mortgage 1"); (f) that certain Assignment of Real Estate Mortgage, Assignment of Leases and Rents and Fixture Filing, pursuant to which BMO assigned all of its rights, title and interest in, to and under that certain Real Estate Mortgage, Assignment of Leases and Rents and Fixture Filing dated as of November 25, 2009, recorded on December 11, 2009 as Instrument No. 200900007325 in the Office of the Recorder of Lawrence County, Indiana (as amended, modified or restated from time to time, "Mortgage 2"); (g) that certain Assignment of Real Estate Mortgage, Assignment of Leases and Rents and Fixture Filing, pursuant to which BMO assigned all of its rights, title and interest in, to and under that certain Real Estate Mortgage, Assignment of Leases and Rents and Fixture Filing dated as of November 15, 2009, recorded on December 1, 2009 as Instrument No. 2010018544 in the Office of the Recorder of Monroe County, Indiana (as amended, modified or restated from time to time, "Mortgage 3"); (h) that certain Assignment

4

of Real Estate Mortgage, Assignment of Leases and Rents and Fixture Filing, pursuant to which BMO assigned all of its rights, title and interest in, to and under that certain Real Estate Mortgage, Assignment of Leases and Rents and Fixture Filing dated as of November 15, 2010, recorded on December 1, 2010 as Instrument No. 201000006581 in the Office of the Recorder of Lawrence County, Indiana (as amended, modified or restated from time to time, "Mortgage 4"); (i) that certain Assignment of Leasehold Mortgage, Assignment of Leases and Rents and Fixture Filing, pursuant to which BMO assigned all of its rights, title and interest in, to and under that certain Leasehold Mortgage, Assignment of Leases and Rents and Fixture Filing dated as of November 15, 2010, recorded on February 13, 2011 as Instrument No. 201100000225 in the Office of the Recorder of Lawrence County, Indiana (as amended, modified or restated from time to time, "Mortgage 5," and collectively with Mortgage 1, Mortgage 2, Mortgage 3, and Mortgage 4, the "Mortgages"); and (j) as further documented, recorded and evidenced by various other agreements, instruments, financing statements and documents in connection therewith and with the Pre-Petition financing arrangements from the Lender to the Debtors (in each case, as amended, restated, supplemented or otherwise modified from time to time, and collectively with the Credit Agreement, the Term Note, the Revolving Note, the Security Agreement, and the Mortgages the "Pre-Petition Agreements").[2]

7.     As of the Petition Date, the aggregate outstanding principal and accrued interest under the Pre-Petition Agreements is approximately $53.6 million (collectively, inclusive of interest, fees, expenses and all Obligations, the "Pre-Petition Loan Indebtedness"). Without prejudice to the rights of any other party (but subject to the limitations thereon described in Paragraph 26 of the proposed Interim Order), the Debtors acknowledge and stipulate that, in

---

[2]     Capitalized terms not otherwise defined herein shall have the definitions set forth in the Pre-Petition Agreements. The Pre-Petition Agreements are attached hereto as Exhibit A.

accordance with the terms of the Pre-Petition Agreements, the Debtors are truly and justly indebted to the Lender, without defense, counterclaim or offset of any kind, and that as of the Petition Date, the Debtors were liable to the Lender in respect of loans made pursuant to the Pre-Petition Agreements.

8.      The Debtors, under the Pre-Petition Agreements and as security for repayment of the Pre-Petition Loan Indebtedness, granted to the Lender security interests in, and liens upon, substantially all of their assets (the "Pre-Petition Collateral"). Upon information and belief, the Lender's security interests in and liens on the Pre-Petition Collateral are properly perfected and are valid, enforceable and non-avoidable first priority liens on and security interests in the Pre-Petition Collateral, subject to the Prior Permitted Liens (as defined in the Interim Order). Finally, due to the Lender's security interest in the Pre-Petition Collateral, the Debtors' cash constitutes proceeds of the Pre-Petition Collateral and is cash collateral of the Lender within the meaning of Bankruptcy Code § 363(a) ("Cash Collateral").

## THE DEBTORS' URGENT NEED FOR POST-PETITION FINANCING

9.      As a consequence of the factors described herein and in the Reutell Declaration, the Debtors have insufficient cash to finance their operations, maintain business relationships with their vendors, suppliers, and customers, and to pay their employees. In order to complete their orderly sale process and maximize the value of their assets for the benefit of their creditors and estates, the Debtors have an immediate need for the financing set forth in the Interim Order. In the absence of the Post-Petition Financing and the use of Cash Collateral, the orderly sale of the Debtors' businesses and assets would not be possible, and would cause serious and irreparable harm to the Debtors and their estates.

10.     Other than the Post-Petition Financing, there are no superior financing alternatives available to the Debtors under the circumstances. The Debtors have been exploring

financial alternatives for at least six months and are intimately familiar with the lack of financing available to them. In fact, the Debtors previously retained an investment banker to seek alternatives, including a sale of their assets and/or equity or a debt refinance. The Post-Petition Financing is a direct result of those efforts, as the investment banker's process ended with the Lender's proposed purchase of the Debtors' secured debt. The Debtors, along with their investment banker and their former lenders, determined that the Lender's offer was the highest and best offer among more than eight separate offers to purchase the Debtors' debt, equity and/or assets.[3] For a number of reasons, including the current state of the financial markets, the size of the financing required, the nature and state of the Debtors' business operations, the immediacy of the Debtors' financing needs, and the liens of the Lender, the Debtors are convinced that they are unable to obtain better financing to address the their urgent liquidity needs.

11.    Indeed, virtually all of the Debtors' assets are encumbered by liens and security interests granted to the Lender. Thus, even if alternative debtor in possession financing were available on favorable terms and conditions and could be consummated in a time frame required to address the Debtors' immediate liquidity needs, obtaining such financing would likely result in a difficult and protracted priming contest with the Lender, the results of which could not be predicted with certainty. Any uncertainty occasioned by protracted financing litigation would be extremely damaging to the Debtors, jeopardizing these cases. Absent immediate availability of new credit, the Debtors will be forced to cease operations and the going-concern value of their business will be lost.

---

[3]    Prior to the Petition Date, the Lender purchased the Loans (as defined in the Pre-Petition Agreements) pursuant to that certain Loan Sale Agreement made as of January 30, 2014, by and among the Lender, as buyer, and BMO Harris Bank N.A., Fifth Third Bank, RBS Citizens Bank, and The Huntington National Bank, as sellers. Pursuant to that certain Assignment and Assumption dated as of January 30, 2014, the Lender purchased and assumed all of the Assignors' rights and obligations under the Pre-Petition Agreements.

12.    Accordingly, the Debtors require the availability of working capital from the Post-Petition Financing and the use of cash collateral. The Post-Petition Financing will provide more than just the ability for the Debtors to operate their businesses; the facility will instill a sense of confidence in the Debtors' employees, customers, vendors, and other important stakeholders. The Debtors critically need the support of these stakeholders at this time, as the loss of their support could severely impair the Debtors' ability to maximize the value of their estates.

13.    In sum, without the immediate access to Post-Petition financing, the Debtors expect to suffer an acute cash shortage that would immediately and irreparably harm their estates and creditors. Furthermore, the Debtors lack sufficient funds to meet expenses necessary for the continued operation of their business before the Final Hearing on this Motion can be held, and, therefore, it is essential that the Debtors obtain the proposed interim financing from the Lender. The Debtors' ability to remain viable and preserve the value of the Debtors' estates for the benefit of their creditors depends upon the interim and final relief requested in the Motion.

## SUMMARY OF THE DEBTORS' PROPOSED POST-PETITION FINANCING[4]

14.    The Debtors have determined, in the exercise of their sound business judgment, that to meet their working capital needs they require a post-petition credit facility in substantially the form described herein. Accordingly, subject to the Court's approval, the Debtors have determined to enter into Post-Petition Financing with the Lender.

15.    The terms of the Post-Petition Financing are more specifically set forth in the proposed Interim Order attached hereto Exhibit B. To save unnecessary administrative expense,

---

[4]    The summaries and descriptions of the terms and conditions of the Post-Petition Financing and the proposed Interim Order set forth in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the Interim Order. In the event there is a conflict between this Motion and the Interim Order, the Interim Order, as applicable, shall control in all respects. All defined terms in this summary and description shall have the meanings proscribed to them in the Interim Order or in the Pre-Petition Agreements, as applicable.

the Post-Petition Financing will be on the same terms as the Pre-Petition Credit Agreement to the

extent that it does not contradict the Interim Order. Additionally, because the Pre-Petition Credit

Agreement was entered into outside of bankruptcy, many of the provisions of the Pre-Petition

Credit Agreement are no longer applicable or impermissible due to the Bankruptcy Code.[5] The

Debtors and the Lender have mutually agreed to void those provisions. The key provisions of

the Post-Petition Financing are as follows:

| Borrowers: | VO Stone Holdings, Inc.; Victor Oolitic Stone Company. |
| --- | --- |
| Lender: | Indiana Commercial Finance, LLC. |
| Loan Facility: | |
| Facility Amount: | Three Million Five Hundred Thousand Dollars ($3,500,000). *See* Proposed Interim Order, Introductory Paragraph. |
| Budget: | A copy of the Budget is attached to the Interim Order as Exhibit A. |
| Interest Rate: | *LIBOR* + 5.5% |
| Default Interest: | Interest Rate + 3.0%. (*See* Pre-Petition Credit Agreement § 4.2) |
| Term: | From the entry of the Interim Order until, and including, April 30, 2014. <br><br> The provisions of the Post-Petition Financing and Interim Order and any actions taken pursuant thereto shall survive entry of any order, including without limitation (a) confirming any plan of reorganization in any of these Chapter 11 Cases (and the Post-Petition Financing shall not be discharged by the entry of any such order or pursuant to Bankruptcy Code § 1141(d)(4)); (b) converting any of these Chapter 11 Cases to Chapter 7 cases; or (c) dismissing any of these Chapter 11 Cases, and the terms and provisions of the Interim Order as well as the Superpriority Claims, Liens and Replacement Liens granted pursuant to the Interim Order and the Pre-Petition Agreements shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims, Liens and Replacement Liens shall maintain their priority as provided by the Interim Order until all Pre-Petition Loan Indebtedness and all Post-Petition Indebtedness is indefeasibly paid in full and discharged. <br><br> (*See* Interim Order ¶¶14 and 23). |

---

[5]    The mutually agreed invalidated portions of the Pre-Petition Agreements are:    Pre-Petition Credit Agreement: §2.1; Pre-Petition Credit Agreement: §2.2; Pre-Petition Credit Agreement: §2.4; Pre-Petition Credit Agreement: §5.1; Pre-Petition Credit Agreement: §5.2; Pre-Petition Credit Agreement §5.3; Pre-Petition Credit Agreement: §6.1; Pre-Petition Credit Agreement: §6.3; Pre-Petition Credit Agreement: §6.4; Pre-Petition Credit Agreement: §7.5; Pre-Petition Credit Agreement: §§8.1-8.4; Pre-Petition Credit Agreement: §9.7; Pre-Petition Credit Agreement: §9.12; Pre-Petition Credit Agreement: §9.20; Pre-Petition Credit Agreement: §10.6; Pre-Petition Credit Agreement: §10.7; Pre-Petition Credit Agreement: §11.12; Pre-Petition Credit Agreement: §11.13; Pre-Petition Credit Agreement: §12.1.1.2; Pre-Petition Credit Agreement: §13.1.3; Pre-Petition Credit Agreement: §13.1.6; Pre-Petition Credit Agreement: §13.1.9; Fifth Amendment to the Pre-Petition Credit Agreement: §2.3; Fifth Amendment to the Pre-Petition Credit Agreement: §2.7; Fifth Amendment to the Pre-Petition Credit Agreement: §2.9; Sixth Amendment to the Pre-Petition Credit Agreement: §1.4; and Sixth Amendment to the Pre-Petition Credit Agreement: §1.7.

| | |
|---|---|
| **Fees & Expenses:** | Without further order of this Court, and in consideration of other accommodations provided by the Lender, the Debtors shall reimburse the Lender for all reasonable out of pocket filing and recording fees, if any, reasonable attorneys' and paralegals' fees, the Lender's Consultants' (as defined in the Interim Order) reasonable fees, and costs and expenses and internal audit fees and expenses incurred by the Lender: (i) in the preparation and implementation of the Interim Order and the various Loans and other Post-Petition Financing, (ii) in the representation of the Lender in the proceedings, and (iii) as otherwise provided in the Pre-Petition Agreements. Subject to the Lender's discretion, the reimbursement contemplated hereby may be made by deducting such amounts from collections of the Lender or by adding such amounts to the Post-Petition Indebtedness. Further, the Lender shall be paid a Post-Petition Financing fee of $100,000, which shall be earned immediately upon entry of the Interim Order but shall not be payable until the earlier of (a) the sale described in Paragraph 20 hereof or (b) the Termination Date, and shall constitute Post-Petition Indebtedness of the Debtors. <br><br> (*See* Interim Order, ¶¶18.) |
| **Collateral:** | Substantially all of the Debtors' assets (including without limitation all real, personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto) as extracted collateral, timber, instruments (including promissory notes), documents, accounts (including health-care insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities, including without limitation, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, tort claims, and all general intangibles including, without limitation, all payment intangibles, patents, patent applications (provided that no security interest shall be granted in United States intent-to-use trademark applications to the extent that, and solely during the period in which, the grant of a security interest therein would impair the validity or enforceability of such intent-to-use trademark applications under applicable federal law), trademarks, trademark applications, trade names, copyrights, copyright applications, software, engineering drawings, service marks, customer lists, goodwill, and all licenses, permits, agreements of any kind or nature pursuant to which Company possesses, uses or has authority to possess or use property (whether tangible or intangible) of others or others possess, use or have authority to possess or use (whether tangible or intangible) of Company, and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics, and the products and proceeds thereof, as more fully described in the Pre-Petition Agreements, which are incorporated herein by reference (collectively, including Cash Collateral (as defined below), the "Pre-Petition Collateral"). <br><br> As security for the Post-Petition Indebtedness, the Lender shall have (effective upon the date of the Interim Order and without the necessity of the recordation of mortgages, security agreements, pledge agreements, financing statements or otherwise) valid and perfected senior security interests in, and liens on (collectively, the "Liens"), all assets of the Debtors of any nature whatsoever and wherever located, tangible or intangible, whether now or hereafter acquired, including without limitation,  any and all proceeds of the foregoing, a 100% pledge of any of the Debtors' capital stock in which any of the Debtors have an interest and the stock of all of the Debtors' subsidiaries, causes of action (including without limitation any commercial tort claims), any avoidance actions under Bankruptcy Code §§ 544, 545, 547, 548, 549, 550 or 553 and the proceeds thereof (provided, however, such lien on avoidance actions shall attach only upon entry of the Final Order and shall be limited to the amount of the Post-Petition Indebtedness except for claims and proceeds thereof under Bankruptcy Code § 549), investment property, leases and all substitutions thereto, accessions, rents and proceeds of the foregoing, wherever located, including insurance and other proceeds (collectively, with all proceeds and products of any or all of the foregoing and including the Pre-Petition Collateral, the "Collateral"): |

|  | Pursuant to Bankruptcy Code § 364(c)(2), a first priority, perfected Lien upon all of the Debtors' right, title and interest in, to and under all Collateral that is not otherwise encumbered by a validly perfected security interest or lien senior to the Liens of the Lender on the Petition Date (the "Prior Permitted Liens"); b.)    Pursuant to Bankruptcy Code § 364(d)(1), a first priority, senior perfected Lien upon all of the Debtors' right, title and interest in, to and under the Pre-Petition Collateral, provided that such first priority senior Lien shall be subject and junior to the Prior Permitted Liens; and c.) Pursuant to Bankruptcy Code § 364(c)(3), a second priority, junior perfected Lien upon all of the Debtors' right, title and interest in, to and under all other Collateral that is subject to Prior Permitted Liens to the extent such perfection in respect of a Pre-Petition Date claim is expressly permitted under the Bankruptcy Code. (Clauses (a), (b) and (c), collectively, the "Collateral."). |
|  | Except to the extent expressly set forth in clauses (a), (b) and (c) of the above paragraph or Paragraph 6 on the Interim Order, the Liens granted pursuant to the Interim Order and the Pre-Petition Agreements to the Lender to secure the Post-Petition Indebtedness shall not be subordinated to or made *pari passu* with any other lien or security interest. The provisions of any intercreditor agreements or subordination agreements that subordinate liens and security interests to the liens and security interests of the Lender or other indentures that subordinate any claims to the claims of the Lender shall remain in full force and effect and shall continue with respect to the liens and security interests granted to the Lender in the Collateral. |
|  | (*See* Interim Order ¶¶ E and 5). |
| **Use of Proceeds:** | The Debtors shall be authorized to use the proceeds of the Post-Petition Indebtedness and the Collateral only for payment of such items as are set forth in the Budget and subject to the terms and conditions set forth in the Pre-Petition Agreements and the Interim Order. The Budget shall be revised by the end of each month during the period of the Interim Order, and shall remain subject to the consent of the Lender each month.

(*See* Interim Order ¶ 11.) |
| **Loan Documentation:** | The definitive Loan Documentation shall be the Interim Order and the Pre-Petition Agreements until the entry of the Final Order. Upon the entry of the Final Order, the Final Order and Pre-Petition Agreements shall be the definitive Loan Documentation. In the event that the Pre-Petition Agreements contradict the Interim or Final Order, the Interim or Final Orders controls. In the event that it is determined that any provision of the Pre-Petition Agreements violates the Bankruptcy Code, such provision shall be void. |
| **Covenants:** [6] | Not later than the second (2nd) business day of each week commencing with the second week of the period covered by the Budget, the Debtors shall provide the Lender with a variance report reflecting, on a line-item basis, the actual cash disbursements and revenues for the preceding week and the percentage variance (the "Variance Percent") of such actual disbursements and revenues from those reflected in the Budget for that period. Revenues less than ninety percent (90%) of the budgeted amount for (a) the first two-week period of the Budget, (b) the first three-week period of the Budget, or (c) any consecutive four-week period of the Budget ("Allowed Revenue Variance") shall constitute an Event of Default in accordance with the provisions of the Interim Order. For the avoidance of doubt, any amount included in the Budget that is not incurred or paid during a particular week shall be permitted to be carried over into subsequent weeks of the Budget. |

---

[6]    In addition to the above-referenced bankruptcy covenants, section 11 of the Pre-Petition Credit Agreement contains numerous other covenants.

|  | |
|---|---|
| | a) The Debtors shall continue their pre-petition cash management system with the Lender pursuant to a cash management order requested to be entered at the first day hearing, in form and substance reasonably acceptable to the Lender. |
| | b) All cash, checks, notes, drafts, instruments, acceptances and other property in the nature of items of payment representing proceeds of property and interests in property of the Debtors (collectively, "Cash Proceeds") currently in the possession of the Debtors or in any accounts in financial institutions depository accounts, shall be deemed proceeds of the Collateral unless such proceeds are specifically identified as not being proceeds of Collateral.  All Cash Proceeds in excess of budgeted collections shall be remitted to the Lender in accordance with the terms of the Interim Order and subject to Paragraph 10 thereof. |
| | c) The Debtors are hereby required to deliver to the Lender such other financial and other information concerning the business and affairs of the Debtors as the Lender shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Lender under the Pre-Petition Agreements, provided however that the Debtors reserve their right to claim that any such documents are protected under attorney-client privilege to the extent permitted under applicable law.  The Debtors shall cooperate with and permit the Lender to perform physical inventories of all assets in the Debtors' facilities at any reasonable times requested by the Lender.  The Debtors shall respond to the Lender's reasonable request for detailed information as to the extent and composition of the Collateral and any collections thereon. <br><br> (*See* Interim Order, ¶¶ 11, 13 and 19.) |
| **Releases** | Subject to the Final Order, in consideration for the Post-Petition Financing, the Debtors on behalf of themselves and their successors and assigns (collectively, the "Releasors"), shall forever release, discharge and acquit the Lender and its officers, directors, employees, agents, attorneys and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so called "lender liability" claims or defenses, which arose on or prior to the date the Interim Order is entered with respect to the Debtors, the Pre-Petition Loan Indebtedness, the Collateral, the Pre-Petition Agreements, the Post-Petition Indebtedness or the Post-Petition Financing. <br><br> (*See* Interim Order, ¶ 25.) |
| **Parties Bound:** | Subject to the Final Order, the findings contained in recital paragraphs of the Interim Order Order and the releases granted in Paragraph 25 of the Interim Order shall be binding upon all parties in interest, including without limitation, the Debtors and any statutory committees appointed in these Chapter 11 Cases, unless a party in interest has properly filed an adversary proceeding or commenced a contested matter (subject to the limitations set forth in Paragraph 6) challenging the amount, validity, enforceability, perfection or priority of the Pre-Petition Loan Indebtedness or the Lender's liens on the Pre-Petition Collateral in respect thereof, no later than a date that is seventy-two (72) days after the Petition Date, and the Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is properly commenced as of such respective date, the Pre-Petition Loan Indebtedness shall constitute an allowed fully secured claim, not subject to subordination and otherwise unavoidable respectively.  Subject only to the rights set forth in this paragraph, for all purposes in these Chapter 11 Cases and any subsequent Chapter 7 cases, the Lender's liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Lender, the Pre-Petition Loan Indebtedness and the Lender's liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without, limitation, any successor thereto.  If any such adversary proceeding or contested matter is properly commenced as of such date, the findings contained in the recital paragraphs of the Interim Order shall nonetheless remain binding on all |

| | |
|---|---|
| | parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter, and all claims other than those claims raised in such challenge shall be subject to the release contained in Paragraph 25 of the Interim Order. If such adversary proceeding or contested matter is dismissed or adjudicated in favor of the Lender, the findings and releases contained herein shall be effective.<br><br>The provisions of the Interim Order shall be binding upon and inure to the benefit of the Lender and its successors and assigns, and the Debtors, and their successors and assigns, including any trustee or other fiduciary hereafter appointed in these Chapter 11 Cases as a legal representative of the Debtors or the Debtors' estates.<br><br>(*See* Interim Order, ¶ 26.) |
| **Credit Bidding** | The Lender shall have the right to "credit bid" the amount of the Pre-Petition Loan Indebtedness and the Post-Petition Indebtedness as of the date of such bid during any sale of all or substantially all of the Debtors' assets to the extent it includes the sale of any Collateral, including without limitation, sales occurring pursuant to Bankruptcy Code § 363 or included as part of any restructuring plan subject to confirmation under Bankruptcy Code § 1129(b)(2)(A)(iii).<br><br>(*See* Interim Order, ¶ 28.) |
| **Events of Default:** | a)   The entry of an order dismissing any of these Chapter 11 Cases or converting any of these Chapter 11 Cases to Chapter 7 cases.<br>b)   The entry of an order appointing a Chapter 11 trustee in any of these Chapter 11 Cases.<br>c)   The entry of an order granting any other claim superpriority status or a lien (other than a Prior Permitted Lien) equal or superior to the liens granted to the Lender (except pursuant to an order under Bankruptcy Code § 506(c)).<br>d)   The entry of an order staying, reversing, vacating or otherwise modifying the Post-Petition Financing under the Interim Order (except as modified in a final order acceptable to Lender) without the Lender's prior written consent.<br>e)   The entry of an order in any of these Chapter 11 Cases appointing an examiner having enlarged powers beyond those set forth under Bankruptcy Code § 1106(a)(3) and (4).<br>f)   An Event of Default or Default under the Pre-Petition Agreements other than an existing default or one related to any financial covenants or to the filing of these cases or the consequences thereof.<br>g)   Any material representation or material warranty by the Debtors to the Lender that is incorrect or misleading in any material respect when made.<br>h)   A change in the orderly sale of the Debtors' business and assets as a going concern or a change of control shall occur other than pursuant to a plan of reorganization or sale.<br>i)    The entry of any order granting any relief from the automatic stay, in an amount in excess of $50,000 so as to allow a third party to proceed against any material asset or assets of the Debtors, other than relating to assets subject to Prior Permitted Liens which if granted will not materially or adversely affect current operations.<br>j)    The entry of the Final Order shall not have occurred within thirty (30) days after the Petition Date.<br>k)   The commencement by the Debtors of other actions adverse to the Lender or its rights and remedies under the Interim Order, the Final Order approving the Motion, or any other Bankruptcy Court order.<br>l)    The failure to pay in full the Post-Petition Indebtedness by the last day of the Term.<br>m)  The Allowed Revenue Variance or the Allowed Disbursement Variance as set forth in Paragraph 11 of the Interim Order, is exceeded.<br>n)   The failure to meet any of the 363 Sale Benchmarks (as defined in ¶20 of the Interim order).<br><br>(*See* Interim Order ¶ 16.) |

| | |
|---|---|
| **Remedies upon the Occurrence of an Event of Default** | If a Default or an Event of Default (as defined in the Pre-Petition Agreements or in the Interim Order) occurs, the Lender shall have the right to immediately suspend funding under Post-Petition Financing and upon the Lender's providing five (5) business days written notice to the Debtors, the Office of the United States Trustee, and any statutory committees appointed in these Chapter 11 Cases ("Default Notice"), the Lender may terminate the Post-Petition Financing facility (the date of any such termination, the "Termination Date") and declare the Loans to be immediately due and payable, and the automatic stay pursuant to Bankruptcy Code § 362(a) shall be deemed lifted and modified, without further order of this Court, to permit the Lender to exercise any and all of its rights and remedies under the Pre-Petition Agreements and the Interim Order; provided, however, that the obligations and rights of the Lender and the Debtors with respect to all transactions which have occurred prior to the Termination Date shall remain unimpaired and unaffected by any such termination and shall survive such termination (including the Carve-Out); provided, further, that the obligation of the Lender to fund accrued unfunded payroll shall also remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further that upon such termination the Lender shall be deemed to have retained all of its rights and remedies, including, without limitation, as provided in the Pre-Petition Agreements and under the Bankruptcy Code. The Debtors' right to use Cash Collateral shall terminate automatically on the Termination Date; provided however that subsequent to the issuance of the Default Notice the Debtors may seek entry of an Order after notice and hearing allowing use of Cash Collateral and prohibiting the Lender from taking the actions contemplated in this paragraph.

Upon the occurrence of a Default or an Event of Default, the Lender may exercise its rights and remedies and take all or any of the following actions without further modification of the automatic stay pursuant to Bankruptcy Code § 362 which is hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions and without further order of or application to this Court: (a) suspend all Post-Petition Financing and loans to the Debtors, and enjoin and prohibit the Debtors from using Cash Collateral to the extent that such Default or Event of Default would permit such relief under the Pre-Petition Agreements, as amended hereby; (b) suspend amounts in any accounts maintained with the Lender, or otherwise enforce rights against all or part of any Collateral in the possession of the Lender to the extent that such Default or Event of Default would permit such relief under the Pre-Petition Agreements, as amended hereby; and/or (c) subject to the provisions of Paragraph 15 of the Interim Order, take any other action or exercise any other right or remedy of the Lender under the Pre-Petition Agreements, the Interims Order or by operation of law. Upon the Debtors' receipt of a Default Notice, they shall immediately cease making any disbursements except those already accrued in accordance with the Budget, subject to further order of the Court after notice and a hearing. To the extent of any inconsistencies between the provisions of this Paragraph 17 and Paragraph 15 of the Interim Order, the provisions of the Interim Order shall control.

(*See* Interim Order, ¶¶ 15 and 17.) |
| **Miscellaneous** | Subject to and conditioned upon entry of a Final Order, in no event shall the Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Collateral.

The Lender shall not be required to file a Proof of Claim in these Chapter 11 Cases.

The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Pre-Petition Agreements, as the Lender may reasonably require, as evidence of and for the protection of the Post-Petition Financing, or which otherwise may be deemed reasonably necessary by the Lender to effectuate the terms and conditions of the Interim Order and the Pre-Petition Agreements.

(*See* Interim Order, ¶¶29-31.) |

| Use of Proceeds Received By Lender: | Except as provided in a Final Order and without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 26), proceeds or payments received by the Lender with respect to the Collateral upon which the Lender had security interests or liens shall be applied as follows:  a.) first, to the payment of all reasonable costs, fees and expenses, including attorneys' fees of the Lender; b.) second, to the payment of Pre-Petition Loan Indebtedness consisting of accrued and accruing interest; c.) third, to the payment of Pre-Petition Loan Indebtedness consisting of principal; d.) fourth, to the payment of Post-Petition Indebtedness including all accrued and accruing interest, costs and expenses, including reasonable attorneys' fees; and e.) fifth, to the payment of the Post-Petition Indebtedness consisting of principal.<br><br>(*See* Interim Order, ¶ 10.) |

## REQUEST FOR APPROVAL OF PROPOSED POST-PETITION FINANCING

16.     As described above, it is essential to the success of these cases that the Debtors immediately obtain access to sufficient post-petition financing, without which the Debtors will be unable to operate or generate income. The Debtors' continuing viability, ability to maximize the value of their estates for the benefit of their creditors, and their ability to pursue the sale of their assets as going concerns depends heavily upon the expeditious approval of the Post-Petition Financing and the related actions requested herein.

17.     Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business and (c) obtaining credit with specialized priority or with security. If a debtor in possession cannot obtain Post-Petition credit on an unsecured basis, pursuant to Section 364(c) of the Bankruptcy Code,[7] a court may authorize a debtor in possession to obtain credit or incur

---

[7]     Section 364(c) of the Bankruptcy Code provides as follows:

If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

(1) with priority over any or all administrative expenses of the kind specified in section 503 (b) or 507 (b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

debt, repayment of which is entitled to superpriority administrative expense status or is secured by a senior lien on unencumbered property or a junior lien on encumbered property, or combination of the foregoing. Pursuant to section 364(d) of the Bankruptcy Code,[8] a court may authorize a debtor in possession to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is already subject to a lien.

18.     As a condition to entering into the Post-Petition Financing and obtaining the Debtors' needed liquidity, the Debtors must obtain authorization, pursuant to sections 364(c) and (d) of the Bankruptcy Code, to grant (a) the Lender automatically perfected security interests in and liens upon all of the Collateral and (b) the Post-Petition Financing allowed superpriority administrative expense claim status in each of these chapter 11 cases and any successor cases.

### *Approval Under Section 364(c) of the Bankruptcy Code*

19.     The statutory requirement for obtaining Post-Petition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtors in possession are "unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense." *See In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (noting that "although a debtor is not required to seek credit from every possible source, a debtor must show that it has made a reasonable effort to seek other sources of credit

---

[8]     Section 364(d) of the Bankruptcy Code provides as follows:

(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d).

available under section 364(a) & (b)"); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (debtor seeking secured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section 364(b) of the Bankruptcy Code).

## The Debtors Were Unable to Obtain Necessary Post-Petition Financing on an Unsecured Basis under 11 U.S.C. § 364(a) or (b)

20.     As set forth in the Reutell Declaration, and as the evidence at hearings on this Motion will show, the Debtors could not have obtained a working capital facility of the type and magnitude required in these cases on an unsecured basis.

21.     To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by good faith effort that credit was not available without" the protections of section 364(c) of the Bankruptcy Code. *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.* at 1088; *see also Ames*, 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Savings Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

22.     Other than the proposed Post-Petition Financing, there are no viable financing alternatives available to the Debtors under the circumstances. The Debtors have been exploring financial alternatives for at least six months and are intimately familiar with the lack of financing

available to them. For a number of reasons, including the current state of the financial markets, the size of the financing required, the nature and state of the Debtors' business operations, the immediacy of the Debtors' financing needs, and the liens of the Lender on the Pre-Petition Collateral, the Debtors are convinced that other than the proposed Post-Petition Financing they would be entirely unable to obtain financing to address the their urgent liquidity needs.

23.     Moreover, as noted above, virtually all of the Debtors' assets are encumbered by liens and security interests granted to the Lender. Thus, even if alternative debtor in possession financing were available on favorable terms and conditions and could be consummated in a time frame required to address the Debtors' immediate liquidity needs, obtaining such financing would likely result in a difficult and protracted priming contest with the Lender, the results of which could not be predicted with certainty. Any uncertainty occasioned by protracted financing litigation would be extremely damaging to the Debtors, immediately jeopardizing their chapter 11 cases at the outset.

### *Approval of Priming Liens*

24.     If a debtor in possession is unable to obtain credit under the provisions of section 364(c) of the Bankruptcy Code, the debtor in possession may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly referred to as a "priming lien." 11 U.S.C. § 364(d). Section 364(d) of the Bankruptcy Code, which governs the incurrence of Post-Petition debt secured by priming liens, provides that the court, after notice and hearing, may authorize the debtor in possession to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is subject to a lien only if —

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

25.    As discussed above, the Debtors have explored financial alternatives and are aware of the lack of financing available to them. In light of that, and given the state of the credit markets, the Debtors have concluded that financing comparable to that provided by the Lender under the Post-Petition Financing is currently unobtainable without priming the Lender's Pre-Petition liens. *See In re Utah 7000, L.L.C.*, 2008 WL 2654919, *2 (Bankr. D. Utah July 3, 2008) (finding debtor unable to obtain financing without priming of Pre-Petition liens); *In re Mosello*, 195 B.R. 277, 287 (Bankr. S.D.N.Y. 1996) (same); *In re 495 Central Park Ave. Corp.*, 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992) (same); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (same).

26.    Thus, the Debtors are unable to obtain alternative Post-Petition financing through credit allowable on an unsecured basis and without granting priming liens. It should be noted that the only liens that are being primed are the pre-petition liens of the Lender, who obviously consents to the priming of such liens as evidenced by the Lender's willingness to participate in the Post-Petition Financing. In these circumstances, the Debtors, in the exercise of their considered business judgment and in consultation with their professional advisors, have determined that the financing provided by the Post-Petition Financing is the most favorable under the circumstances and provides the Debtors necessary liquidity to maintain the going concern value of their business pending the conclusion of the Debtors' proposed sale process.

*The Loans Under the Post-Petition Financing are Necessary to Preserve Assets of the Debtors' Estates*

27.     It cannot reasonably be disputed that the Debtors have an immediate need for access to a working capital facility. As with most businesses of the Debtors' size, the Debtors have significant cash needs. Access to substantial credit to purchase inventory, pay employees and to keep their businesses running is critical to the Debtors' survival. In the absence of immediate access to cash and credit, the Debtors' suppliers and employees may refuse to supply the inventory and services required to maintain operations.

28.     The Post-Petition Financing is also essential so that the Debtors can immediately instill their employees, suppliers and customers with confidence in the Debtors' ability to meet their obligations to these important stakeholders. Absent such confidence, the Debtors will not have the resources or support necessary to maintain operations and preserve their value as a going concern.

29.     The success of these chapter 11 cases thus depends on the confidence of the Debtors' employees, vendors, and customers. If this Motion is denied or delayed, that confidence may be destroyed, and the success of these chapter 11 cases might be irreparably damaged. In contrast, once the Post-Petition Financing is approved, the Debtors' ability to provide their employees, vendors, customers, and other important stakeholders with the necessary confidence will be assured. The Debtors' need for access to the Post-Petition Financing is, therefore, immediate.

*Application of the Business Judgment Standard*

30.     After appropriate and extensive investigations and analysis, and robust, good faith, and arm's length negotiations among the Debtors, the Lender, and the Debtors' management concluded that the proposed Post-Petition Financing and the use of cash collateral

is the best alternative available in the circumstances of these cases. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset based facility were approved because they "reflect[ed] sound and prudent business judgment on behalf of TWA . . . [were] reasonable under the circumstances and in the best interest of TWA and its creditors"); *In re TM Carlton House Partners, LTD*, 91 B.R. 349, 357 (Bankr. E.D. Pa. 1988) (holding that due to the debtor's distinct awareness of its own financial needs, the court would not second-guess its business judgment to put aside cash to effectuate a refinancing of its debts); *cf. Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943) (holding that decisions regarding the rejection or assumption of a lease is left to the business judgment of the debtor); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus. Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (holding that courts generally will not second-guess a debtor in possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code"). In fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

31.     The terms of the proposed Post-Petition Financing are in the best interests of the Debtors' estates. Accordingly, the Debtors should be granted authority to enter into the Post-

Petition Financing and obtain funds from the Lender on the secured, administrative "superpriority" basis described above, pursuant to sections 364(c) and (d) of the Bankruptcy Code.

### *Highlighted Provisions Under Rule 4001-2*

32.    Local Rule 4001-2(a) states in pertinent part that:

(i) All Financing Motions must (a) recite whether the proposed form of order and/or underlying cash collateral stipulation or loan agreement contains any provision of the type indicated below, (b) identify the location of any such provision in the proposed form of order, cash collateral stipulation and/or loan agreement and (c) justify the inclusion of such provision:

(A) Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the Pre-Petition secured creditors (i.e., clauses that secure Pre-Petition debt by Post-Petition assets in which the secured creditor would not otherwise have a security interest by virtue of its Pre-Petition security agreement or applicable law);

(B) Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's Pre-Petition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters;

(C) Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c);

(D) Provisions that immediately grant to the Pre-Petition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549;

(E) Provisions that deem Pre-Petition secured debt to be Post-Petition debt or that use Post-Petition loans from a Pre-Petition secured creditor to pay part or all of that secured creditor's Pre-Petition debt, other than as provided in 11 U.S.C. § 552(b);

(F) Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out;

(G) Provisions that prime any secured lien without the consent of that lender; and

(H) Provisions that seek to effect the Court's power to consider the equities of the case under 11 U.S.C. § 552(b)(1).

Del. Bankr. Local Rule 4001-2(a)(i).

33.    Pursuant to Local Rule 4001-2(a)(i)(B), Paragraph 26 of the Interim Order reads:

Subject to the Final Order, the findings contained in recital paragraphs of this Order and the releases granted in Paragraph 25 of this Order shall be binding upon all parties in interest, including without limitation, the Debtors and any statutory committees appointed in these Chapter 11 Cases, unless a party in interest has properly filed an adversary proceeding or commenced a contested matter (subject to the limitations set forth in Paragraph 6) challenging the amount, validity, enforceability, perfection or priority of the Pre-Petition Loan Indebtedness or the Lender's liens on the Pre-Petition Collateral in respect thereof, no later than a date that is seventy-two (72) days after the Petition Date, and the Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced as of such respective date, the Pre-Petition Loan Indebtedness shall constitute an allowed fully secured claim, not subject to subordination and otherwise unavoidable respectively. Subject only to the rights set forth in this paragraph, for all purposes in these Chapter 11 Cases and any subsequent Chapter 7 cases, the Lender's liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Lender, the Pre-Petition Loan Indebtedness and the Lender's liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without, limitation, any successor thereto. If any such adversary proceeding or contested matter is properly commenced as of such date, the findings contained in the recital paragraphs of this Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such

adversary proceeding or contested matter, and all claims other than
those claims raised in such challenge shall be subject to the release
contained in Paragraph 25 of this Order.   If such adversary
proceeding or contested matter is dismissed or adjudicated in favor
of the Lender, the findings and releases contained herein shall be
effective.

34.     Pursuant to Local Rule 4001-2(a)(i)(D), Paragraph 5 of the Interim Order reads:

As security for the Post-Petition Indebtedness, the Lender shall
have and is hereby granted (effective upon the date of this Order
and without the necessity of the recordation of mortgages, security
agreements, pledge agreements, financing statements or otherwise)
valid and perfected senior security interests in, and liens on
(collectively, the "Liens"), all assets of the Debtors of any nature
whatsoever and wherever located, tangible or intangible, whether
now or hereafter acquired, including without limitation, and any
and all proceeds of the foregoing, a 100% pledge of any of the
Debtors' capital stock in which any of the Debtors have an interest
and the stock of all of the Debtors' subsidiaries, causes of action
(including without limitation any commercial tort claims), any
avoidance actions under Bankruptcy Code §§ 544, 545, 547, 548,
549, 550 or 553 and the proceeds thereof (provided however, such
lien on avoidance actions shall only attach upon entry of the Final
Order and shall be limited to the amount of the Post-Petition
Indebtedness except for claims and proceeds thereof under
Bankruptcy Code § 549), investment property, leases and all
substitutions thereto, accessions, rents and proceeds of the
foregoing, wherever located, including insurance and other
proceeds (collectively, with all proceeds and products of any or all
of the foregoing and including the Pre-Petition Collateral, the
"Collateral").

35.     Pursuant to Local Rule 4001-2(a)(i)(F), Paragraph 6 of the Interim Order reads:

Any provision of this Order or the Pre-Petition Agreements to the
contrary notwithstanding, the Liens and Superpriority Claims
granted to the Lender pursuant to the Pre-Petition Agreements and
this Order shall be subject and subordinate to a carve-out  (the
"Carve-Out") for (a) quarterly fees required to be paid pursuant to
28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the
Bankruptcy Court and (b) the aggregate allowed unpaid fees and
expenses payable under Sections 330, 331 and/or 363 of the
Bankruptcy Code to each professional person retained by the
Debtors pursuant to an order of this Court (the "DIP
Professionals"), including the Debtors' approved attorneys (the

"Debtors' Counsel")[9] (other than fees and expenses, if any, of such professional persons incurred, directly or indirectly, in respect of, arising from or relating to the investigation, initiation or prosecution of any cause of action against the Lender, the Lender or with respect to the Post-Petition Indebtedness and the Pre-Petition Loan Indebtedness or the Pre-Petition Agreements) in an amount not to exceed the unpaid amounts budgeted in any approved Budget on an accrual basis for periods prior to the Termination Date (as defined below), whenever ultimately allowed by the Court) for each such professional, less any pre-petition retainer held by any such professional (the "Professionals' Carve-Outs"). The Professionals' Carve-Outs may be increased if and only to the extent that the Lender agrees in writing in its sole discretion. The DIP Professionals shall submit to the Debtors, with a copy to the Lender, copies of their bills for fees and expenses on a monthly basis. Notwithstanding anything herein to the contrary, no Loans, Collateral, Cash Collateral, or any portion of the Carve-Out may be used to prosecute, object to or contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Loan Indebtedness or Post-Petition Indebtedness or the liens securing the Pre-Petition Loan Indebtedness or Post-Petition Indebtedness, or to prosecute or assert any claims or causes of action against the Lender. Subject to entry of the Final Order, except for the Carve-Out, no costs and expenses incurred in connection with the administration of these Chapter 11 Cases or any conversion of these Chapter 11 Cases pursuant to Bankruptcy Code §1112, or in any future proceedings or cases related hereto, whether incurred pursuant to Bankruptcy Code §726(b) or otherwise, shall be charged against the Pre-Petition Indebtedness, the Post-Petition Indebtedness, or the Collateral, pursuant to §506(c) of the Bankruptcy Code or otherwise, without the express written consent of the Lender.

36.    The justification for the provisions of the Post-Petition Financing for which

disclosure is required pursuant to Local Rule 4001-2 is the immediate and critical need for this

financing. As discussed above, the Debtors were unable to secure post-petition financing on

terms more favorable than that obtained from the Lender and such financing is critical to the

maximization of recoveries for the Debtors' creditors. Indeed, without this financing, the

---

[9]    No Official Committee of Unsecured Creditors (the "Committee") has been appointed in these cases. If a committee is formed, a separate "Carve-Out" will be negotiated for its professionals.

Debtors will be forced to immediately shut down and liquidate, and any significant returns for unsecured creditors will almost certainly be eliminated.    Accordingly, the facts and circumstances of these cases justify the inclusion of the terms that require disclosure under Local Rule 4001-2, and these terms of the Post-Petition Financing should be approved.

## REQUEST FOR USE OF CASH COLLATERAL

37.    The Debtors will require the ability to use cash and the proceeds of existing accounts receivable and inventory to maintain the operation of their businesses and preserve their value as going concerns.  These essential items, however, constitute part of the Lender's Cash Collateral and, therefore, may not be used in support of the Debtors' ongoing business activities absent compliance with section 363(c)(2) of the Bankruptcy Code.

38.    Section 363(c)(2) of the Bankruptcy Code provides that:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> > (A) each entity that has an interest in such cash collateral consents; or
> >
> > (B) the court, after notice and a hearing, authorized such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

39.    In the instant cases, the Lender has consented to the Debtors' use of Cash Collateral.  Because such use is essential to the preservation of the Debtors' estates and the Lender have consented, the Court should approve the Debtors' use of Cash Collateral under section 363(c)(2) of the Bankruptcy Code.

## APPROVAL OF ADEQUATE PROTECTION

40.    In exchange for the Debtors' use of the Pre-Petition Collateral, including Cash Collateral, and the priming of the Pre-Petition liens of the Lender (the "Pre-Petition Liens"), the

Lender is entitled to receive adequate protection pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in the value of each of its respective interests in the Pre-Petition Collateral (including Cash Collateral) resulting from the Debtors' use, sale, or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Pre-Petition Liens on the Pre-Petition Collateral, and the subordination to the Carve Out (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

**_Lender's Adequate Protection_**

41.    The Debtors propose to provide the Lender with adequate protection in accordance with sections 361, 363, and 364 of the Bankruptcy Code. To that end, the Debtors, and the Lender have negotiated, and the Debtors request the Court approve, as of the Petition Date, certain protections of the Lender's interest in the Pre-Petition Collateral from any Diminution in Value of each of its respective interests in the Pre-Petition Collateral. Such adequate protection, as described more fully in the Interim Order, is summarized below.

(i)    the Lender shall be granted (effective upon the date of the Interim Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid and perfected, replacement security interests in, and liens on (the "Replacement Liens"), all of the Debtors' right, title and interest in, to and under the Collateral, subject only to (x) the Carve-Out, (y) the Liens granted pursuant to this Order and the Pre-Petition Agreements to the Lender to secure the Post-Petition Indebtedness and (z) any Prior Permitted Liens (after giving effect to this Order) prior in interest and senior to the Liens granted to the Lender pursuant to this Order and the Pre-Petition Agreements; and

(ii)    the Lender shall be granted, pursuant to Bankruptcy Code § 364(c)(1), Superpriority Claims, junior only to (x) the Superpriority Claims granted pursuant to this Order to the Lender in respect of the Post-Petition Financing and (y) the Carve-Out.

42.   By the terms of the Post-Petition Financing, the Lender requires that, except as set

forth in Paragraphs 5 and 6 of the Interim Order:

>    the Liens and Replacement Liens shall be prior and senior to all
>    liens and encumbrances (other than Prior Permitted Liens) of all
>    other secured creditors in and to such Collateral granted, or arising,
>    after the Petition Date (including, without limitation, liens and
>    security interests, if any, granted in favor of any federal, state,
>    municipal or other governmental unit, commission, board or court
>    for any liability of the Debtors). The Liens and Replacement Liens
>    granted pursuant to this Order shall constitute valid and duly
>    perfected security interests and liens, and the Lender shall not be
>    required to file or serve financing statements, notices of lien or
>    similar instruments in respect of the Pre-Petition Loan
>    Indebtedness which otherwise may be required under federal or
>    state law in any jurisdiction, or take any action, including taking
>    possession, to validate and perfect such security interests and liens;
>    and the failure by the Debtors to execute any documentation
>    relating to the Liens or Replacement Liens shall in no way affect
>    the validity, perfection or priority of such Liens or Replacement
>    Liens. If, however, the Lender at its sole discretion shall determine
>    to file any such financing statements, notices of lien or similar
>    instruments, or to otherwise confirm perfection of such Liens or
>    Replacement Liens, the Debtors are directed to cooperate with and
>    assist in such process, the stay imposed by Bankruptcy Code §
>    362(a) is hereby lifted to allow the filing and recording of a
>    certified copy of this Order or any such financing statements,
>    notices of lien or similar instruments, and all such documents shall
>    be deemed to have been filed or recorded at the time of and on the
>    date of the Interim Order.

43.   The Debtors believe that the proposed adequate protection is fair and reasonable.

The Lender has agreed that the adequate protection summarized above and provided for in the

Interim Order is sufficient to allow the Debtors to use the Lender's Cash Collateral.

Furthermore, the priming of the Pre-Petition Liens will enable the Debtors to obtain the Post-

Petition Financing. As a result, the Lender consents to such priming liens and is entitled to

receive adequate protection of its interest in the Pre-Petition Collateral. However, nothing herein

or in the Interim Order shall affect or impair the Lender's right to seek additional adequate

protection of its interests. Notwithstanding any other provision in the Interim Order, the grant of

adequate protection to the Lender pursuant in the Interim Order is without prejudice to (a) the right of the holders of any Prior Permitted Liens to seek modification of the grant of adequate protection provided in the Interim Order so as to provide different or additional adequate protection, and (b) the right of the Debtors or any other party in interest to contest any such modification.

44.    Accordingly, based on the foregoing, the Debtors respectfully request that the Court authorize the Debtors to provide certain adequate protections in accordance with the terms set forth in the Interim Order.

## THE DEBTORS SHOULD BE PERMITTED TO MAKE INTERIM BORROWINGS UNDER THE POST-PETITION FINANCING

45.    This Court is empowered to conduct a preliminary expedited hearing on this Motion and authorize the Interim Order.    Specifically, Bankruptcy Rule 4001(c) governs the procedures for securing authorization to obtain debtor in possession financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c).

46.    Pending the Final Hearing, the Debtors require $2 million under the Post-Petition Financing for, inter alia, payment of vital services and other working capital needs. It is essential that the Debtors immediately stabilize their operations and resume paying for ordinary, Post-Petition operating expenses in order to preserve the value of the Debtors' estates for the benefit of all of the Debtors' creditors and equity holders.

47.     Absent immediate financing for their continuing business operations, the Debtors will be unable to pay operating expenses and, therefore, unable to continue to conduct their businesses pending the Final Hearing.  Consequently, if interim relief is not obtained, the Debtors, their estates, their creditors and equity holders, their businesses, their employees, and their assets will suffer immediate and irreparable harm.

48.     Bankruptcy Rule 4001(c) permits a court to approve a debtor's request for financing during the 14-day period following the filing of a motion requesting authorization to obtain Post-Petition financing "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Bankruptcy Rule 4001(c)(2).  The Debtors' current financial distress and acute need for post-petition liquidity, provides ample evidence to support the conclusion that the Debtors will avoid immediate and irreparable harm only if the Court authorizes the relief provided for in the Interim Order.

49.     Accordingly, the Debtors request that, pending the Final Hearing, the Court schedule an interim hearing on the Petition Date or as soon thereafter as is practical to consider the Debtors' request for authorization to obtain interim financing under the Post-Petition Financing up to a maximum in the aggregate principal amount of $3.5 million to sustain operations and comply with terms and conditions of the Post-Petition Financing.

## GOOD FAITH

50.     The Debtors submit that the terms and conditions of the Post-Petition Financing, and the fees paid and to be paid thereunder, are the best available to the Debtors under the circumstances.  As stated above, the Debtors and the Lender negotiated the terms and conditions of the Post-Petition Financing and the use of Cash Collateral in good faith and at arm's length.  Moreover, the Debtors' decision to enter into the Post-Petition Financing was an exercise of the Debtors' prudent business judgment.  Therefore, the Lender should be accorded the benefits of

section 364(e) of the Bankruptcy Code to the extent any or all of the provisions of the Post-Petition Financing, or any interim or final order of this Court pertaining thereto, are hereafter modified, vacated, stayed or terminated by subsequent order of this or any other court.

51.    The transactions contemplated by the Post-Petition Financing are not intended to provide the Lender with sufficient control over the Debtors so as to subject the Lender to any liability (including, without limitation, environmental liability as an "owner," "operator," or "responsible person" as those terms are used in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorizations Act of 1986) in connection with the management of the Debtors' business or any of the Debtors' properties. By providing the Post-Petition Financing or taking any actions pursuant to the Interim Order, the Lender shall not: (a) be deemed to be in control of the operations or sale of the Debtors; or (b) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation, management or sale of the Debtors.

## REQUEST FOR MODIFICATION OF THE AUTOMATIC STAY

52.    The Interim Order contemplates a modification of the automatic stay established pursuant to section 362 of the Bankruptcy Code, to the extent necessary, to effectuate all of the terms and provisions of the Interim Order, including, without limitation, to (a) permit the Debtors to grant the adequate protection set forth therein; (b) permit the Debtors to perform such acts as the Lender may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Lender under the Post-Petition Financing and the Interim Order; and (d) authorize the Debtors to pay and the Lender to retain and apply payments made in accordance with the terms of the Interim Order.

53.     Stay modification provisions of this type are customary features of Post-Petition debtor in possession financing facilities and, in the Debtors' business judgment, are reasonable under the circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the Interim Order.

## REQUEST TO WAIVE BANKRUPTCY RULES 6003(B), 6004(A), AND 6004(H)

54.     In order to successfully implement the foregoing, the Debtors respectfully request that the Court waive the notice requirements provided for by Bankruptcy Rule 6004(a), the twenty-one day stay provided for by Bankruptcy Rule 6003(b), and the fourteen-day stay provided for by Bankruptcy Rule 6004(h). The Debtors believe, for the reasons set forth above, that ample justification exists for the Court to waive Bankruptcy Rule 6003(b), 6004(a), and 6004(h).

## REQUEST FOR FINAL HEARING

55.     Pursuant to Bankruptcy Rule 4001(c)(2), the Debtors request the Court to set a date for the Final Hearing that is no later than 25 days from the Petition Date.

## NOTICE

56.     Notice of the interim hearing on this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims; and (c) counsel for the Lender. As this Motion is seeking first day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). The Debtors respectfully submit that no further notice of the interim hearing on this Motion is required.

## NO PRIOR REQUEST

57.     No prior request for the relief sought in the Motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form of the Interim Order annexed hereto as Exhibit B; (ii) schedule the Final Hearing, (iii) after the Final Hearing, enter a Final Order substantially in the form of the Interim Order and as filed with the Court prior to the Final Hearing; and (iv) grant such other and further relief as is just and proper.

Respectfully submitted,

Dated:  February 17, 2014
        Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____/s/ Andrew R. Remming_____
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE 19899-1347
Telephone:    302-658-9200
Facsimile:    302-658-3989
dabbott@mnat.com
aremming@mnat.com

-and-

Shawn M. Riley (OH 0037235)
Paul W. Linehan (OH 0070116)
T. Daniel Reynolds (OH 0089712)
McDONALD HOPKINS LLC
600 Superior Avenue E., Suite 2100
Cleveland, OH 44114
Telephone:    (216) 348-5400
Facsimile:    (216) 348-5474
sriley@mcdonaldhopkins.com
plinehan@mcdonaldhopkins.com
dreynolds@mcdonaldhopkins.com

*Proposed Counsel for Debtors
and Debtors in Possession*

8001805

33